MICHAEL JEROME KALAFUT, ADMINISTRATOR, ETC.

V.

JOHN DEFREES GRUVER, JR.

Record No. 890307

March 2, 1990

Present: All the Justices

*Jeffrey H. Krasnow* for appellant.

*Melissa J. Warner (Gentry, Locke, Rakes & Moore*, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

In this case of first impression in Virginia, involving prenatal harm, we decide whether an action for a child's wrongful death may be maintained against a tortfeasor whose negligence occurred when the decedent was in the mother's womb.

On August 26, 1985 in Roanoke County, a motor vehicle operated by Debra E. Kalafut was struck from the rear by another vehicle driven by appellee John Defrees Gruver, Jr. Kalafut was approximately twenty-one weeks pregnant and suffered personal injuries in the accident.

On September 10, 1985, Kalafut began to experience vaginal bleeding and cramping. She was hospitalized on September 11. On September 14, she went into premature labor and gave birth to a son, Hunter Brandon Kalafut, who was born alive at 7:49 p.m. The child died the same evening at 9:09 p.m. The premature delivery and death were proximately caused by the accident and Gruver's negligence.

In August 1987, appellant Michael Jerome Kalafut, administrator of the estate of Hunter Brandon Kalafut, deceased, filed the present negligence action under the Virginia Death By Wrongful Act statute against Gruver seeking recovery in damages for the infant's death. The defendant filed a responsive pleading admitting "legal liability" for the accident but denying that the accident caused the premature delivery and death of the plaintiff's decedent. Subsequently, defendant filed a motion for summary judgment, and the parties agreed to a stipulation of facts solely for the purposes of defendant's motion.

Upon consideration of the stipulation and argument of counsel, the trial court granted the motion, relying on *Lawrence v. Craven Tire Co.*, 210 Va. 138, 169 S.E.2d 440 (1969) (no action will lie under Virginia law for wrongful death of a stillborn child). Upon *stare decisis* principles, the trial court felt bound by *Lawrence*, "in absence of legislation by the Virginia General Assembly or a change of position by the Virginia Supreme Court." We awarded

the plaintiff an appeal from the December 1988 final order dismissing the action.

Virginia's wrongful death statute provides, as pertinent:

"Whenever the death of a person shall be caused by the wrongful act, neglect, or default of any person . . . and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action . . . and to recover damages in respect thereof, then . . . the person who . . . would have been liable, if death had not ensued, shall be liable to an action for damages . . . notwithstanding the death of the person injured. . . ." Code § 8.01-50(A).

On appeal, defendant contends the trial court did not err, principally relying on *Lawrence* and *Modaber* v. *Kelley*, 232 Va. 60, 348 S.E.2d 233 (1986). In *Lawrence*, a woman pregnant with a viable child (capable of an existence independent of its mother) was injured in a November motor vehicle accident. The unborn child received injuries that impaired development, and it was born dead the following January.

In holding that the action would not lie, the Court referred to the statutory requirements for maintenance of a wrongful death action: (1) the death of a "person," and (2) the act, neglect, or default be "such as would, if death had not ensued, have entitled the party injured to maintain an action" for personal injuries. The Court held that a viable fetus is not a "person" within the statute's meaning. Also, the Court refused to hold that a child *en ventre sa mere* can maintain a common law action for personal injuries. Thus, the Court said, the right to maintain the action could not be transmitted to the personal representative under the wrongful death statutory scheme. 210 Va. at 140-42, 169 S.E.2d at 441-42.

Defendant concedes that the infant here, born alive, was a "person" within the meaning of the statute. Defendant argues, however, that for this suit to be maintained the child was required to "have had a right of action that arose at the time of the automobile accident when he was in his mother's womb. Since *Lawrence* clearly held that there is no such cause of action, the plaintiff here similarly has no right to sue."

Defendant says there is "no legal significance" to the fact that the child in the present case survived birth while the child in *Lawrence* was stillborn. That decision mandates the same result here, defendant argues, because in *Lawrence* the unborn child was viable at the time of the automobile accident, and the Court nevertheless denied a cause of action for the wrongful death.

Defendant notes that recently we reaffirmed *Lawrence* in *Modaber*, another case of a stillbirth, in which the elements of damage were under review. *Modaber* involved a woman's action for personal injuries brought against her physician for medical malpractice in the course of treatment during pregnancy and at the time of birth. We stated that "an unborn child is a part of the mother until birth" and held that "injury to an unborn child constitutes injury to the mother and that she may recover for such physical injury and mental suffering associated with a stillbirth." 232 Va. at 66, 348 S.E.2d at 236-37. Defendant argues that the mother in the present case has "a legal remedy for the injury to her infant" because she has a separate action to recover damages for her own injury in the accident and can recover the items of damage delineated in *Modaber*.

Additionally, defendant contends that since "the infant here was not a 'person' until birth, no cause of action could have arisen against Mr. Gruver because any possible act of negligence on his part occurred *before* the child's birth." And, defendant urges, subsequent to the child's birth when he became a "person" in the eyes of the law, "there was no act of negligence committed by Mr. Gruver that caused the death of a 'person'."

Finally, defendant argues that to allow "an infant's estate to maintain a cause of action against a defendant whose negligence resulted in the *in utero* injuries ultimately causing death would impose liability on the defendant without a corresponding duty or breach."

We do not agree with defendant's contentions. *Lawrence* and *Modaber* are factually distinguishable. Furthermore, we are persuaded by the pertinent law elsewhere that maintenance of actions like this should be allowed in Virginia. And, given the requirement in the wrongful death statute that conditions recovery on the decedent's ability to maintain a personal injury action if he or she had survived, "the basic question of liability for prenatal injuries is precisely the same, whether it arises in a wrongful death action brought by the representative of the child whose

death after birth was caused by prenatal injuries, or in a personal injury action brought by the child itself." Annot., 40 A.L.R.3d 1222, 1226 n.8 (1971).

The law of prenatal injuries has changed considerably in recent years. Formerly, most courts denied recovery for such injuries resulting from a defendant's negligence and denied recovery for the death of such an infant, whether the death occurred before or after birth. The reasons usually assigned for such rulings were that defendant owed no duty to one not in existence at the time of the wrongful act and that fictitious claims would be prevalent due to the great difficulty of proving any causal connection between the negligence and damage. 3 F. Harper, F. James, & O. Gray, *The Law of Torts* § 18.3 at 671-75 (2nd ed. 1986); *Prosser and Keeton on The Law of Torts* § 55 at 367 (5th ed. 1984); Restatement (Second) of Torts § 869 comment a (1979); annot., 40 A.L.R.3d at 1226-27.

The first American decision on the subject apparently was *Dietrich* v. *Northampton*, 138 Mass. 14, 52 Am.Rep. 242 (1884). In a wrongful death action resulting from the premature birth of a nonviable fetus, the court, in an opinion by Justice Oliver Wendell Holmes, established the rule of nonliability for prenatal injuries. This decision was widely followed by the courts but was criticized by the commentators. *See, e.g.*, Muse and Spinella, *Right of Infant to Recover for Prenatal Injury*, 36 Va. L. Rev. 611 (1950). This criticism, together with developments in medical science, especially in the field of embryology, prompted reconsideration of the precedent.

█ In 1946, a federal court decided that prenatal injuries to a viable unborn child are compensable in a tort action brought on behalf of the child after its live birth. *Bonbrest* v. *Kotz*, 65 F. Supp. 138 (D. D.C. 1946). This decision receives credit for generating a change in the rule. Our research has disclosed no court of last resort, nor have we been referred to any, which presently adheres to the rule of nonliability for prenatal injuries when the child is born alive. *See, e.g.*, cases collected in Harper, James, & Gray § 18.3 at 672 n.4. *See generally* Note, *The Case of The Prenatal Injury*, 15 U. Fla. L. Rev. 527, 527-41 (1963); Gordon, *The Unborn Plaintiff*, 63 Mich. L. Rev. 579 (1965).

█ Consequently, we adopt the following principle in this case, paraphrasing the Restatement rule: A tortfeasor who causes harm to an unborn child is subject to liability to the child, or to

the child's estate, for the harm to the child, if the child is born alive. *See* Restatement (Second) of Torts § 869(1). We do not limit the application of this rule to unborn children who are viable at the time of the tortious act. Thus, an action may be maintained for recovery of damages for any injury occurring after conception, provided the tortious conduct and the proximate cause of the harm can be established. Given the present state of medical technology, however, the proof of causation obviously becomes increasingly more difficult as the focus moves to the beginning of pregnancy. Restatement (Second) of Torts § 869 comment d. But the difficulty of proving the facts should not cause the denial of a right to bring the action. With the complex litigation of today, trial courts are accustomed to applying evidentiary rules and to adjudicating difficult sufficiency of the evidence questions dealing with causation.

▆ Contrary to the defendant's assertions, the rule we adopt today has no impact on the precedential value of *Lawrence* or *Modaber*. We adhere to the *Lawrence* holding that "the Virginia wrongful death statute as written does not provide an action for the wrongful death of a stillborn child." 210 Va. at 142, 169 S.E.2d at 442. In the present case, we have drawn the line between nonliability and liability for prenatal injury at the moment of live birth of the child. At least 12 other jurisdictions adhere to this conditional liability rule, allowing an action for wrongful death only if the child is born alive. Comment, *The Conditional Liability Rule*, 28 U. Fla. L. Rev. 187, 197 n.80 (1975). At least 21 jurisdictions allow recovery for the wrongful death of a viable stillborn child. *Id.* at n.79.

▆ From the standpoint of practicality and fairness, this is the appropriate place to draw the line. For one reason, the beneficiaries' claim for pecuniary compensation for the death of a child who never lives is considerably more speculative and tenuous than is the claim for compensation of a child "who lives to bear the seal of defendant's negligence with all the conscious suffering and economic loss it may entail." Harper, James, & Gray at 679.

▆ For another reason, the mother is entitled to recover in her action for personal injuries, connected with a stillbirth, damages for her "physical injury and mental suffering associated with [the] stillbirth," *Modaber*, 232 Va. at 66, 348 S.E.2d at 237. We were careful in *Modaber*, however, to anticipate the present case when we pointed out that the mother was *not* entitled "to damages ordi-

narily recoverable in a wrongful death action." *Id.* We specified that "the mother may not recover for anticipated loss of the child's society, companionship, comfort, or guidance. She may not be compensated for an expected loss of income of the child or for services, protection, care, or assistance expected to be provided by the child had he lived," statutory items of damage allowable to the child's estate for its wrongful death. *Id.* at 66-67, 348 S.E.2d at 237. *See* Code § 8.01-52 (listing items of damage recoverable for wrongful death).

Finally, we address defendant's contention that because we adopted the view in *Lawrence* that an unborn child is a part of the mother until birth and said in *Modaber* that injury to an unborn child constitutes injury to the mother, then we cannot permit this action to be maintained without overruling those decisions. This is because, defendant says, at the time of defendant's tort the child was not a "person" entitled to maintain an action for personal injuries, as required by the statute. As we already have said in rejecting such contention, *Lawrence* and *Modaber*, involving stillbirths, are distinguishable on their facts. Moreover, in *Modaber* we did not say that injury to the fetus constituted harm *only* to the mother; we merely said the mother had a claim for her personal injuries associated with a stillbirth.

More importantly, however, the test is not, as defendant implies, whether the decedent could have maintained a personal injury action at the time of defendant's negligence or, stated differently, whether a fetus can maintain a tort action at the time it is injured *in utero*. Rather, the statutory test is whether, had death not ensued, the person could subsequently have maintained a personal injury action. Clearly, the answer to that question is in the affirmative in the case of a live birth.

When a child is born alive, the argument that an unborn child is not a "person" misses the point. "There is no question that conception sets in motion biological processes which if undisturbed will produce what every one will concede to be a person in being. If in the meanwhile those processes can be disrupted resulting in harm to the child when born, it is immaterial whether before birth the child is considered a person in being." *Smith* v. *Brennan*, 31 N.J. 353, 364, 157 A.2d 497, 503 (1960).

While a fetus is not a "person," it is not a nonentity. For example, an unborn child is protected by the criminal law on abortion. Code §§ 18.2-71 to -76.1. The unborn child is afforded

property rights under the statute of descents, Code § 64.1-8.1, and under the statutes on wills, Code § 64.1-70. Such a child is afforded dependency status under the workers' compensation law, Code § 65.1-66. Therefore, in the context of this case, there is no requirement that the plaintiff be in existence at the time of the negligence, only that it be born alive and suffer from the effects of the injury. Indeed, such a concept has been routinely recognized in medical malpractice litigation in Virginia where recovery is permitted for prenatal injuries resulting in permanent disabilities to the child who is born alive and lives for a prolonged period of time. *See Bulala* v. *Boyd*, 239 Va. 218, 389 S.E.2d 670 (1990) (decided today); *Rutherford* v. *Zearfoss*, 221 Va. 685, 272 S.E.2d 225 (1980).*

For these reasons, the judgment of dismissal will be reversed, and the action will be remanded for further proceedings on the motion for judgment.

*Reversed and remanded.*

* We do not address in this case, despite defendant's insistence, the "cause of action"/ "right of action" dichotomy peculiar to statute of limitations issues. We will save for another day a discussion of that question as it relates to prenatal injury when a statute of limitations issue is presented.