**Gresha BROWN, et al., Plaintiffs,**

**v.**

**Richard P. GREEN, M.D., Defendant.**

**Civ. A. No. 90–847–LFO.**

United States District Court,
District of Columbia.

June 13, 1991.

Ashcraft & Gerel by Michelle A. Parfitt, James M. Hanny, Washington, D.C., for plaintiff.

Brault, Graham, Scott & Brault, Laurence T. Scott, Washington, D.C., for defendant.

MEMORANDUM

OBERDORFER, District Judge.

An Order of March 8, 1991 granted defendant Green's motion for summary judgment and dismissed the complaint for reasons to be stated in a forthcoming memorandum. Upon reconsideration, that Order will be vacated and defendant's motion for summary judgment denied.

### I.

■ Plaintiffs allege that Green, a gynecologist practicing in the District of Columbia, provided plaintiff Gresha Brown with negligent prenatal care and thereby caused the premature birth and subsequent death of the twins that Brown was carrying. In his summary judgment motion, Green implicitly concedes that there is a genuine issue as to whether he breached the relevant standard of care. It is, however, undisputed that Green's alleged negligence must have occurred before the fetuses were viable, at a time when "the[ir] organs, particularly the lungs, were not sufficiently developed to support life, either independently or with artificial aid." Affidavit of Anne B. Fletcher; *see also* Autopsy Reports, May 31, 1989 (Defendant's Exhibit 2). Thus, the question presented here is whether a previable fetus born alive but dying soon after birth may recover for injuries caused by a physician's negligent care.

There is no clear answer to this question under District of Columbia law, which controls in this diversity action. *See, e.g., Schleier v. Kaiser Foundation Health Plan of Mid–Atlantic States, Inc.,* 876 F.2d 174, 180 (D.C.Cir.1989) (holding that out of comity to the District of Columbia Court of Appeals federal courts should, where appropriate, apply District of Colum-

bia law in diversity cases). In *Greater Southeast Community Hospital v. Williams*, 482 A.2d 394 (D.C.1984), the Court of Appeals ruled that a fetus' close relatives as well as its successors in interest may bring wrongful death and survival actions on behalf of a *viable* fetus that does not survive to birth for injuries sustained *in utero*. Specifically, it held that

> (1) a viable fetus has a right to be free of tortious injury; (2) a child born alive has a cause of action for such an injury; (3) a viable fetus negligently injured *en ventre sa mere* is a "person" within the meaning of our wrongful death and survival statutes.

*Id.* at 395. The Court of Appeals refused, however, to express any "opinion as to the existence of a cause of action for injuries to a fetus prior to viability." *Id.* at 396 n. 2 (citation omitted). Nor does its reasoning provide much of a clue as to what that opinion is likely to be. The Court of Appeals adopted the rationale of *Bonbrest v. Kotz*, 65 F.Supp. 138 (D.D.C.1946), which it characterized as resting

> on the established medical fact that a fetus is a person separate from its mother, as well as the injustice and inconsistency of denying a legal personality to a fetus under negligence law while recognizing it as a separate entity under criminal and property law.

*See Greater Southeast Community Hospital v. Williams*, 482 A.2d at 396 (citation omitted). This rationale is equivocal on the question here. On the one hand, it notes that criminal and property law regard "a child *en ventre sa mere* ... as a human being ... from the moment of conception." *Bonbrest*, 65 F.Supp. at 140. On the other hand, it treats a fetus as "a person separate from its mother" because the fetus "has, *if viable*, its own bodily form and members, manifests all of the anatomical characteristics of individuality, possesses its own circulatory, vascular and excretory systems and is now capable of being ushered into the visible world." *Id.* at 141 (emphasis added and deleted). In other words, while *Bonbrest*'s "legal argument" suggests that viability is not important, its "medical argument" suggests that it is,

and the D.C. Court of Appeals has yet to resolve the tension between these two arguments.

Green contends that in the absence of any clearer indication from the D.C. Court of Appeals that court should be deemed to follow the majority rule that a fetus may not recover for injuries sustained before viability. *See, e.g., Estate of Baby Foy v. Morningstar Beach Resort, Inc.*, 635 F.Supp. 741 (D.V.I.1986); *Humes v. Clinton*, 246 Kan. 590, 594–95, 792 P.2d 1032, 1036 (1990); *Milton v. Cary Medical Center*, 538 A.2d 252 (Me.1988); *Rambo v. Lawson*, 799 S.W.2d 62 (Mo.1990) (en banc); *Coveleski v. Bubnis*, 391 Pa.Super. 409, 571 A.2d 433 (Pa.Super.), *appeal granted*, 525 Pa. 656, 582 A.2d 323 (1990). Plaintiffs, however, point out that Maryland and Virginia have joined a growing trend towards recognizing a cause of action for injuries sustained before viability if, as here, the fetuses are born alive. *See Group Health Ass'n v. Blumenthal*, 295 Md. 104, 116–19, 453 A.2d 1198, 1206–07 (1983); *Kalafut v. Gruver*, 239 Va. 278, 284–85, 389 S.E.2d 681, 684 (1990); *see generally* Collins, *An Overview and Analysis: Prenatal Torts, Preconception Torts, Wrongful Life, Wrongful Death, and Wrongful Birth. Time for a New Framework*, 22 J. Family Law 677, 677 n. 18 (1984).

■ As a general rule of thumb, the decisions of nearby jurisdictions are the most persuasive indication of how a particular state will decide a common law issue, and, at least with respect to Maryland law, that rule of thumb has been elevated into a formal principle. The District of Columbia by statute incorporates Maryland's common law as it stood on February 27, 1801. *See* D.C.Code § 49–301 (1990). Consequently, the D.C. Court of Appeals has found Maryland law to be "especially persuasive authority." *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983); *accord Watkins v. Rives*, 125 F.2d 33, 35 (D.C.Cir.1941) (noting that the D.C. Circuit, when it sat as the court of final instance in the District of Columbia, "customarily, looked to later decisions of the Court of Appeals of Maryland for assistance"). Indeed, the D.C.

Court of Appeals may have a statutory obligation to "look to the laws of Maryland for guidance when a question novel to our law is before us." *White v. Parnell*, 397 F.2d 709, 710 n. 1 (D.C.Cir.1968). Whatever the precise authority of Maryland law, in the absence of any evidence of the D.C. Court of Appeals' opinion, it is the best indicator of how the D.C. Court of Appeals will rule upon a particular question. *See, e.g., Nat'l R.R. Passenger Corp. v. Consol. Rail Corp.*, 670 F.Supp. 424, 433 (D.C.Cir. 1987). It therefore appears that the D.C. Court of Appeals would find that *previable* fetus has, at least if born alive, a cause of action for injuries sustained *in utero*.

Accordingly, defendant's motion for summary judgment should be denied. Because, however, the question is a close one that may determine the outcome of this litigation, this decision will, if the parties wish, be certified to our Court of Appeals under 28 U.S.C. § 1292(b).

### II.

 In their opposition, plaintiffs argued that if there were no cause of action for the fetuses, then the mother must be able to recover damages for the personal injury and emotional distress caused by their premature birth. The plaintiffs, therefore, sought to amend their complaint to include claims that they suffered directly from Green's alleged negligence. Upon review of the relevant case law, it has become clear that in the District of Columbia a pregnant woman may recover for any injury negligently inflicted upon her by her doctor regardless of whether a separate cause of action is available to her fetus. *See Coughlin v. George Washington University Health Plan, Inc.*, 565 A.2d 67, 70 & n. 3 (D.C.1989). Accordingly, the plaintiffs' amended complaint should be filed and the defendant's request for additional discovery granted.

### III.

In summary, given the Maryland Court of Appeals' decision in *Group Health Ass'n, Inc. v. Blumenthal*, it appears more likely than not that the D.C. Court of Appeals would recognize a cause of action for injuries to a previable fetus, at least one

born alive. Moreover, it appears that regardless of whether there is a cause of action for injuries to the fetus, the mother may recover for her suffering due to a premature birth. Accordingly, the accompanying order will vacate the Order of March 8, 1991, deny defendant's motion for summary judgment, and grant defendant's request for additional discovery.